UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELLEN FRITZ, : | |
|     Plaintiff, : | CIVIL CASE NO. |
| : | 3:10-CV-33 (JCH) |
| V. : | |
| : | |
| THE EYE CENTER, ET AL., : | AUGUST 11, 2010 |
|     Defendants. : | |

**RULING ON DEFENDANTS' MOTION TO DISMISS (DOC. NO. 22)**

**I.    INTRODUCTION**

Plaintiff Ellen Fritz ("Fritz") brings this action against her former employer, The Eye Center, as well as Eye Center CEO Alden Mead ("Mead"), and Jennifer Danard ("Danard"), Fritz's immediate supervisor (collectively, "defendants"). In Count One of her Amended Complaint (Doc. No. 19) ("Am. Comp."), which is the operative complaint for purposes of this Ruling, Fritz contends that the defendants unlawfully interfered with the exercise of her rights pursuant to the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601, et seq. ("FMLA"). In Counts Two and Three, Fritz contends she was subject to unlawful age and disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12102, et seq. ("ADA"), and the Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq. ("ADEA"), respectively. See Am. Comp. at ¶¶ 37-47. Count Four alleges intentional infliction of emotional distress, in violation of Connecticut law. Id. at ¶ 48-52. On June 15, 2010, the defendants moved to dismiss Fritz's Amended Complaint in its entirety. See Motion to Dismiss ("Mot. to Dismiss") (Doc. No. 22). For the reasons that follow, that Motion is granted.

## II. STANDARD OF REVIEW

In deciding this Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the court takes the allegations of the plaintiffs' Amended Complaint as true and construes them in a manner favorable to the plaintiffs. See, e.g., Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002). The court must draw all reasonable inferences in the plaintiffs' favor. See, e.g., Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005).

A motion to dismiss for failure to state a claim tests only the adequacy of the complaint. See United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004). Bald assertions, and mere conclusions of law, do not suffice to meet the plaintiffs' pleading obligations. See Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006). Instead, plaintiffs are obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), rev'd on other grounds sub. nom. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S. Ct. at 1949.

## III. FACTUAL BACKGROUND

In her Amended Complaint, Fritz alleges that, on October 9, 2000, she was hired as an "ophthalmic technician" by The Eye Center, an ophthalmology business with four offices in Connecticut and more than 80 employees. Am. Comp. at ¶¶ 6, 7, 10. From before the date of her hiring, she has suffered from fibromyalgia, which she describes

as a "chronic medical condition" and a "disabling disease."[1]  Id. at ¶¶ 11, 12.  During her interview with The Eye Center, which presumably took place before she was initially hired, Fritz revealed that she suffered from fibromyalgia.  Id. at ¶ 14.

During her tenure at The Eye Center, Fritz "had to be absent from work," for an unspecified number of days, "due to her fibromyalgia."  Id. at ¶ 25.  However, she was never "absent from work in any given time period for twelve (12) weeks."  Id. at ¶ 16.  On January 8, 2008, Fritz was notified that her employment had been terminated.  Id. at ¶ 17.

## IV. DISCUSSION

### A. Count I: FMLA

In Count One, Fritz contends that the defendants interfered with her rights under the FMLA by failing to notify her of the protections she was afforded under that Act.  See 29 U.S.C. § 2615(a)(1).  "To establish a prima facie case for denial of FMLA benefits, a plaintiff must show that (1) she is an eligible employee under the FMLA; (2) the defendant is a covered employer under the FMLA; (3) the plaintiff was entitled to leave under the FMLA; (4) the plaintiff gave appropriate notice to defendant of her intention to take leave; and (5) the defendant denied her benefits to which she was entitled."  Roberts v. Ground Handling, Inc., 499 F. Supp. 2d 340, 351 (S.D.N.Y. 2007) (internal quotation marks and citations omitted).  In support of their Motion to Dismiss Count One, the defendants contend that the Amended Complaint lacks adequate factual allegations to satisfy prongs three and five of the prima facie case.

---

[1] The Amended Complaint provides no information about the disabling effects of fibromyalgia.

The FMLA provides that qualified employees may take up to twelve work weeks of leave during a twelve month period due to a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C § 2612(a)(1)(D). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves-- (A) inpatient care in a hospital; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). In support of her claim, Fritz alleged that she suffered from a chronic medical condition, fibromyalgia, for which she was under the care of her treating physician. Am. Comp. at ¶11. During her several years of employment at the Eye Center, Fritz asserts that she had to be absent from work due to her fibromyalgia. Id. at ¶ 25. The majority of her "sick" absences were due to her chronic medical condition. Id. at ¶ 15. Accordingly, the court concludes that Fritz has alleged adequate facts to satisfy prong three at this stage of the litigation.

In support of prong five, the denial-of-rights element of the prima facie case, Fritz alleges that defendants failed both to post required FMLA notices and to inform her of her rights under the FMLA through the employees handbook. Contrary to Fritz's allegations, the defendants contend the Eye Center's employee handbook notifies employees that 12 weeks of unpaid leave is available under the FMLA for "a serious health condition that makes you unable to perform the essential function [of] your job." See Eye Center Handbook, Exh. B at 6. Cf. Am. Comp. at ¶ 23 ("The employee's handbook informs female employees of the Eye Center that FMLA is available for those females who become pregnant."). The defendants further argue that there is no private right of action based solely upon an employer's failure to post a required FMLA notice.

Mem. in Supp. at 8.

Under the FMLA, employers are required to post notices in the workplace that inform employees of their rights pursuant to that Act. See 29 U.S.C. § 2619. The Second Circuit, however, has declined to interpret the FMLA as giving employees a federal cause of action against employers for having failed to post such notices. Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 162 (2d Cir. 1999). Rather, the FMLA gives an employee a right to sue in such circumstances only where the lack of notice had an "effect on the employee's exercise of or attempt to exercise any substantive right conferred by the Act." Id.; see also Cinelli v. Oppenheim-Ephratah Cent. Sch. Dist., 2009 WL 4724670, at *6 (N.D.N.Y. 2009) ("While an employer's failure to comply with § 2619 does not provide an employee with a private cause of action, an employee may allege under § 2615(a)(1) that her employer's failure to provide notice interfered with her rights under the Act so long as the employer's failure somehow negatively affected the exercise of the employee's benefits."). If "there are issues of fact which, if true, would establish that plaintiff was somehow hindered from exercising her rights by defendant's failure to provide notice of the protections afforded under the Act, plaintiff may state a . . . claim under § 2615(a)(1) for interference with her FMLA rights." Cinelli, 2009 WL 4724670, at *6; see also Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 142-44 (3d Cir. 2004) (noting that the Supreme Court found it "reasonable" to suggest "'that a failure to advise of FMLA rights could constitute an interference with 'an employee's exercise of basic FMLA rights in violation of § 2615'") (quoting Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89-90 (2002)).

Here, Fritz has failed to allege facts to suggest that defendants' failure to post

notices in the workplace had any effect on her exercise of or attempt to exercise any substantive right conferred by the Act. Indeed, the allegations set forth in the Amended Complaint, construed, along with reasonable inferences drawn therefrom, in Fritz's favor, do not show any interference with her FMLA rights. It is simply not clear from the Amended Complaint that defendants' failure to post FMLA notices or to inform Fritz directly of her rights affected her leave, benefits, or reinstatement.

The court therefore grants the defendants' Motion to Dismiss Count One of the Amended Complaint. The court gives plaintiff leave to replead her FMLA claim, provided plaintiff has a factual and legal basis to do so.

B.  Counts II and III: ADA and ADEA

As a threshold matter, Fritz's ADEA claims against Mead and Danard must be dismissed, as individual defendants cannot be liable under that statute. See Martin v. Chemical Bank, Nos. 95-9015, 96-9365, 129 F.3d 114, 1997 WL 701359 (Table), at * 3 (2d Cir. Nov. 10, 1997) ("[I]ndividual supervisors may not be held personally liable under the ADEA.") (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir.1995) (holding, in the Title VII context, that an individual defendant may not be held individually liable), abrogated on other grounds by Burlington Indus. v. Ellerth, 524 U.S. 742 (1998)); Anderson v. Derby Bd. of Educ., --- F.Supp.2d ----, 2010 WL 2465431 at *4 (D. Conn. 2010). The same is true of Fritz's ADA claim. Martin, 129 F.3d 114, 1997 WL 701359, at * 3 (stating that "ADA, Title VII, and ADEA statutes are very similar and that '[c]ourts routinely apply arguments regarding individual liability to all three statutes interchangeably'") (quoting EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1279-80 (7th Cir.1995)); Moultrie v. VIP Health Care Servs., 2010 WL 1037693,

at *2 ("As is the case with both Title VII and the ADEA, the ADA does not provide individual liability").

Moreover, Fritz's ADA and ADEA claims against the Eye Center fall far short of the plausibility standard articulated by the Supreme Court in Iqbal, 129 S. Ct. at 1949. The Second Circuit employs the McDonnell-Douglas burden shifting analysis to assess age and disability discrimination claims. McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96-97 (2d Cir. 2009) (ADA); Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 114-15 (2d Cir. 2007) (ADEA). Under such analysis, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." McBride, 583 F.3d at 96.

In the ADEA context, a plaintiff must establish the following elements to make out a prima facie case of age discrimination:

> '(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.'

Berube v. Great Atlantic & Pacific Tea Co., Inc., 348 Fed. Appx. 684, 686 (2d Cir. 2009) (quoting Roge v. NYP Holdings, 257 F.3d 164, 168 (2d Cir. 2001)). In the ADA context, on the other hand, a prima face case consists of a showing that:

> (1) plaintiff is a person with a disability under the meaning of the [applicable statute]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

McBride, 583 F.3d at 97.

As to the ADEA claim, the defendants argue that Fritz has failed to plead any facts to show that they terminated Fritz's employment under circumstances giving rise to an inference of age discrimination. The court agrees. In support of her age discrimination claim, Fritz merely alleges that she is 62 years old and that defendants engaged in unlawful employment practices in violation of the ADEA when they fired her in 2008. Am. Comp. at ¶¶ 38-45. That plaintiff was a member of the protected class in question, and fired after almost eight years of service, are inadequate factual allegations to make out a claim that rises above the speculative level. Indeed, the Amended Complaint contains no hint of any "circumstances giving rise to an inference of discrimination." Berube, 348 Fed. Appx. at 686.

Similarly, as to the ADA claim, the Amended Complaint is bereft of any alleged facts that would permit the court to draw a causal connection between Fritz's fibromyalgia and the termination of her employment. In support of her ADA claim, Fritz contends that she suffers from a disabling disease, that the defendants knew of such condition, and that she collected an unspecified number of sick absences over the term of her employment due to this condition. Id. at ¶¶ 12, 13, 15. However, there is nothing in the Amended Complaint linking the defendants' knowledge of her disability to her termination.

For the foregoing reason, the court grants defendants' Motion to Dismiss Counts II and III of plaintiff's Complaint. The court grants Fritz leave to replead ADA and ADEA claims, provided that she has a factual and legal basis to do so.

C. Count IV: Intentional Infliction of Emotional Distress

Count IV of the Amended Complaint alleges intentional infliction of emotional Distress ("IIED"). In order to state a valid IIED claim, the plaintiff must allege: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Id.

> [I]n assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function. In this capacity, the role of the court is to determine whether the allegations of a complaint . . . set forth behaviors that a reasonable fact finder could find to be extreme or outrageous. In exercising this responsibility, the court is not fact finding, but rather is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress."

Tracy v. New Milford Public Schools, 101 Conn. App. 560, 569 (2007) (internal quotation marks omitted).

To survive the defendants' Motion to Dismiss, Fritz would have to set forth in her Amended Complaint events or circumstances on which a rational trier of fact to find that the defendants behaved in a manner that "exceeds all bounds usually tolerated by decent society." Appleton, 254 Conn. at 210-11 (internal quotation marks and citations omitted). Indeed, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to . . . be regarded as atrocious, and utterly intolerable in a civilized community." Id. (internal quotation marks and

citations omitted).

In support of her IIED claim, Fritz contends that she was verbally notified of her termination on January 8, 2008, and that defendants knew or should have known that their decision to terminate employment would cause her severe emotional distress. Am. Comp. at ¶18. However, there is nothing in the Amended Complaint indicating behavior that "exceeds all bounds usually tolerated by decent society" or to be regarded as "utterly intolerable in a civilized community." Appleton, 254 Conn. at, 210-11. "An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000) (collecting cases). In this case, Fritz does not allege any facts suggesting that Fritz's termination was carried out in a peculiarly egregious or oppressive manner. To the contrary, the Amended Complaint merely recounts the fact that, on January 8, 2008, Fritz was told that she was being fired.

Accordingly, the court grants defendants' Motion to Dismiss Count Four of plaintiff's Complaint. The court gives Fritz leave to replead her IIED claim, no later than September 2, 2010, if she has a legal and factual basis to do so.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Doc. No. 22) is **GRANTED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 11th day of August 2010.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge